IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

MICHAEL ISETON,                              )
                                             )
        Plaintiff,                           )
                                             )
    vs.                                      )    Case No. 1:22-cv-01057
                                             )
EVONIK GOLDSCHMIDT CORPORATION               )
and EVONIK CORPORATION,                      )
                                             )
        Defendant.                           )
_____             )
                                             )
EVONIK CORPORATION,                          )
                                             )
        Third-Party Plaintiff,               )
                                             )
    vs.                                      )
                                             )
EAGLE SERVICES CORPORATION,                  )
                                             )
        Third-Party Defendant.               )

**THIRD PARTY COMPLAINT**

**NOW COMES** the Defendant/Third-Party Plaintiff, EVONIK CORPORATION ("Evonik"), by

Robert M. Bennett, of HEYL, ROYSTER, VOELKER & ALLEN, P.C., one of its attorneys, and

complaining of the Third-Party Defendant, EAGLE SERVICES CORPORATION ("Eagle"), and states

and alleges as follows:

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

1.      The Plaintiff, Michael Iseton, has filed a Complaint against Evonik, alleging Plaintiff

was injured while working for Eagle at Evonik's processing plant ("the Plant") in Mapleton, Peoria

County, Illinois. Plaintiff filed his Complaint on December 23, 2021, in the Circuit Court of the

Tenth Judicial Circuit, Peoria County, Illinois. Evonik timely removed the Complaint to this Court.

**EXHIBIT 1**

The Complaint asserts an Illinois state law tort claim. This Court has asserted diversity jurisdiction over the claims in the Complaint pursuant to 28 U.S.C. Section 1332(a)(1).

2.    Evonik answered Plaintiff's Complaint and has denied the material allegations therein and asserted affirmative defenses.

3.    Plaintiff alleges injuries resulting from work and alleged exposure to unknown substances at the Plant. Evonik has denied and continues to deny these allegations.

4.    At all times relevant herein, there was and is a written contract between Evonik and Eagle for the provision of certain services, called Agreement for Services and Goods (Tier I), ("Agreement"), a copy of which is attached hereto as Exhibit A, with certain business information redacted.

5.    At all relevant times, Plaintiff, Michael Iseton, was an employee of Eagle, and worked for Eagle at the Plant while engaged in providing services to Evonik under the Agreement.

6.    On information and belief, Eagle was and is a corporation doing business in Illinois, with its headquarters in Valparaiso, Indiana, and organized and existing under the laws of the State of Indiana.

7.    This Court has supplemental jurisdiction over the third-party claims asserted herein under 28 U.S.C. § 1367(a), because said third-party claims form part of the same case or controversy which Plaintiff alleges in his original Complaint.

**COUNT I**
**(Contribution)**

As and for Count I of its Third-Party Complaint, Evonik states and alleges as follows:

1-7.    Evonik restates and realleges Paragraphs 1 through 7 of the Common Allegations as and for Paragraphs 1 through 7 of this Count I as though fully set forth and alleged herein.

2

8.      On and before December 29, 2019, Plaintiff was working for Eagle at the Plant and assisting Eagle in the performance of services under the Agreement.

9.      Plaintiff alleges that he was injured while working for Eagle at the Plant. Evonik has denied that Plaintiff was injured and further has denied that he was injured in the manner or to the extent claimed.

10.     At all times relevant herein, and while Eagle provided services to Evonik at the Plant under the Agreement, and while Eagle employed Plaintiff, Eagle had a duty to exercise reasonable care for the safety of the Plaintiff.

11.     Notwithstanding said duty, Eagle failed to exercise reasonable care, and was negligent in one or more or all of the following respects:

a)  Eagle failed to train, supervise, and manage its own employees, including the Plaintiff, in moving and handling substances at the Plant;

b)  Eagle failed to train, supervise, and manage its own employees, including the Plaintiff, in performing work at the Plant;

c)  Eagle failed to provide its employees, including the Plaintiff, with proper tools, materials and equipment, including personal protective equipment, while performing work at the Plant;

d)  Eagle failed to warn its own employees, including the Plaintiff, of hazards at the Plant;

e)  Eagle failed to provide proper supervision to its own employees, including the Plaintiff, in performing work at the Plant;

f)  Eagle failed to instruct its employees on how to perform work at the Plant in a reasonably safe manner; and

g)  Eagle was otherwise careless and negligent under the circumstances, and otherwise failed to exercise reasonable care for the safety of the Plaintiff.

12.     At all relevant times there was in full force and effect in the State of Illinois an act known as the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 et seq. The JTCA affords

a right of contribution between and among parties who are subject to liability in tort for the same transaction or occurrence.

13.    If the Plaintiff establishes that he was injured and that his injuries were a result of work at the Plant, then his alleged injuries, if any, were not a result of any acts or alleged omissions on the part of Evonik, but rather were a proximate result of the negligent acts and omissions of Eagle, as set forth herein.

14.    In the event that the Plaintiff obtains a judgment against Evonik for his alleged injuries, if any, then Evonik is entitled to a judgment against Eagle for an amount commensurate with the percentage of negligence attributable to Eagle.

WHEREFORE, the Defendant/Third-Party Plaintiff, EVONIK CORPORATION, respectfully requests judgment against the Third-Party Defendant, EAGLE SERVICES CORPORATION, for an amount commensurate with the percentage of fault attributable to EAGLE, and that the Court enter judgment against EAGLE on said amount. Defendant/Third-Party Plaintiff further requests that it have and recover its costs incurred herein and for all such other and further relief as this Court deems appropriate.

DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY ON THIS COUNT.

## COUNT II
**(Contractual Indemnity)**

As and for Count II of this Third-Party Complaint, Evonik states and alleges as follows

1-7.    Evonik restates and realleges Paragraphs 1 through 7 of the general allegations as and for Paragraphs 1 through 7 of this Count II, as though fully alleged and set forth herein.

8.    The Plaintiff's work and presence at the Plant was governed under the Agreement between Evonik and Eagle ("Agreement"). A redacted copy of the Agreement is attached hereto as Exhibit A.

4

9.    Under the Agreement, Eagle was required to indemnify Evonik, and hold Evonik harmless, against claims arising out of the work or arising out of injury or death to anyone by reason of the work. In particular, the Agreement provides as follows in pertinent part:

12. Indemnification.

12.1 [Eagle] agrees to indemnify and hold harmless [Evonik], ... from and against any and all claims or demands (whether rightful or baseless), losses, costs, expenses, obligations, liabilities, damages, recoveries, awards and deficiencies, including, without limitation, interest, penalties, and reasonable attorneys' fees and costs, and expert witness fees (collectively "Losses"), that the Indemnified Parties incur or may incur or suffer and to the extent that the Losses arise out of or relate to: (i) [Eagle] or any of its owners, officers, employees, subcontractors or agents (collectively "Contractor's personnel") negligence or willful misconduct in the performance or nonperformance of Work under this Agreement; ... (iii) any injury or death to any person or damage to or destruction of property of [Eagle], [Eagle's] employees or its subcontractors or materialmen or third parties. The foregoing applies whether or not such injuries are due to any negligence of the Indemnities, excepting from the foregoing the sole and complete negligence of the Indemnified Parties.

12.2 [Eagle] shall, at its sole cost, defend all suits brought upon such Losses, and pay all costs and expenses incidental thereto but [Evonik] or any of the Indemnified Parties so sued shall have the right at their option, to participate in the defense of any such suit, without relieving [Eagle] of any obligations hereunder.

12.3 [Eagle's] obligations in this Section are not to be reduced or limited in any way by Losses in excess of insurance coverage or limits or by any defense [Eagle] may have under applicable workers' compensation laws or under other employee disability or benefit laws.

12.3 (sic) [Eagle's] obligations to indemnify under this Agreement shall survive termination or expiration of this Agreement.

The Agreement also contains the following provisions:

**IV – General Terms and Conditions–Insurance**

Following are the <u>minimum</u> insurance requirements under this Agreement:

[Eagle] shall at its own cost and expense, obtain and maintain in full force the following types of insurance in the minimum amounts set forth below with insurance carriers having a rating of A as to financial strength by the latest edition of A. M. Best Co. effective in all localities where [Eagle] may perform the Work:

\*\*\*

b. Comprehensive General Liability insurance including Contractor's Protective and Completed Operations, covering bodily injuries and property damage with combined single limits of $5,000,000 each occurrence and $5,000,000 aggregate.

\*\*\*

Prior to the commencement of any Work hereunder, [Eagle] shall furnish [Evonik] ... a Certificate of Insurance on an Acord form demonstrating the coverages referred herein. ... All stated insurance policies, where applicable, will, to the extent of [Eagle's] negligence or willful misconduct, designate [Evonik] and each of its Affiliated Companies, as applicable as **Additional Insured**, without qualifications or limitations, as its interest may appear.

10.    By virtue of the foregoing Agreement provisions, Eagle agreed to indemnify and hold harmless Evonik from the claims alleged in the Complaint. Evonik is therefore entitled to indemnity from Eagle for the full amount of any judgment which may be entered against Evonik by reason of the claims of the Plaintiff herein, including but not limited to amounts ordered to be paid to the Plaintiff as damages, and all costs and litigation expenses, including but not limited to court costs, litigation expenses, witness fees, and attorney fees.

WHEREFORE, Defendant/Third-Party Plaintiff, EVONIK CORPORATION, respectfully requests judgment against the Third-Party Defendant, Eagle Services Corporation, for the full amount of any judgment and/or verdict entered against Evonik in this action, including amounts it may be ordered to pay to the Plaintiff as damages, and all costs and litigation expenses,

including court costs, litigation costs and expenses, witness fees, and attorney fees. Evonik further requests that it have and recover its costs incurred herein and for all such other and further relief as this Court deems appropriate.

DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY ON THIS COUNT.

EVONIK CORPORATION

BY:_____/s/ Robert M. Bennett_____
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Robert M. Bennett, ARDC #6215752
Devin M. Taseff, ARDC #6333448

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
P.O. Box 6199
Peoria, Illinois 61601-6199
Telephone  309.676.0400
Facsimile  309.420.0402
Primary e-service: peoecf@heylroyster.com
Secondary e-service #1: rbennett@heylroyster.com
Secondary e-service #2: dtaseff@@heylroyster.com
Secondary e-service #3: mkeogel@heylroyster.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on September \_\_\_, 2022, I caused the foregoing Third-Party Complaint to be filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew L. Mahoney
Edward J. Prill
CROWLEY & PRILL
3012 Division Street
Burlington, IA 52601
amahoney@cbp-lawyers.com
eprill@cbp-lawyers.com

/s/ Robert M. Bennett

10-36 / 41984245

## AGREEMENT FOR SERVICES AND GOODS (TIER I)

This Agreement is for Services and Goods (defined herein) by and between:
Evonik Goldschmidt, a Delaware Corporation (the "Company"); and
Eagle Services Corporation, an
*Indiana*
corporation (the "Contractor")

WHEREAS, Contractor is engaged in the business of providing construction, fabrication, maintenance, repair, installation or similar services at customer sites (and providing any goods related to such services); and

WHEREAS, Company desires to engage Contractor to provide these goods and services at one or more of its sites; and

WHEREAS, Company and Contractor desire to establish the terms and conditions pursuant to which such goods and services will be provided to Company (and any of its Affiliated Companies, if specifically designated on page 3).

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the parties agree as follows:

Contractor shall provide, sell and/or deliver to Company and Company shall purchase from Contractor the goods and services described in this Agreement.

This Agreement for Goods and Services shall consist of this Cover Page and the following documents, all of which are attached hereto and an integral part hereof (collectively, the "Agreement"):

| | |
|---|---|
| Part I | Commercial Terms |
| Part II | General Terms and Conditions |
| Part III | General Terms and Conditions - Environmental Safety and Health |
| Part IV | General Terms and Conditions - Insurance Requirements |
| Part V | General Terms and Conditions - General Site Policies |
| Exhibit IV-I | Sample Certificate of Insurance |

All capitalized terms are defined in the Commercial Terms (attached as Part I) or in the General Terms and Conditions (attached as Parts II – V).

This Agreement constitutes the entire agreement of the parties with respect to the subject matter contained herein and supersedes all prior and/or contemporaneous agreements, understandings, representations and warranties, both written and oral, with respect to the subject matter.

All purchases of Work (as defined herein) are expressly limited to and conditioned upon acceptance of this Agreement by Contractor, regardless of whether Contractor sells or offers the Work through any other media or means, including, but not limited to, written agreements, electronic orders via Electronic Data Interchange, acknowledgments, confirmations or other writings from Contractor to Company and notwithstanding Company's act of accepting or paying for any purchase or any similar act of Company regarding the Work. Unless the terms and conditions regarding any sale of Work are expressly agreed to by Company in a writing signed by Company, any additional or conflicting terms and conditions contained on, attached to or referenced by Contractor's documents, or other prior or

# EXHIBIT A

later communication from Contractor to Company, shall have no effect on the purchase of any such Work by Company from Contractor and are expressly rejected by Company.

Company may, from time to time, issue Purchase Orders against this Agreement, to indicate pricing, quantities, or other commercial arrangements between the parties. This Agreement contains the terms and conditions applicable to such Purchase Orders. Purchase Orders will be used to convey additional or supplemental commercial information only for the Work being requested at the time, which shall be incorporated into and made a part of the General Terms and Conditions of this Agreement. Any terms and conditions attached to or incorporated into any response by Contractor to the Purchase Order are void and superseded by the General Terms and Conditions of this Agreement. This Agreement shall either be referenced in or is otherwise incorporated by reference into all Purchase Orders issued to Contractor during the term of this Agreement.

In the event of any conflict between the Commercial Terms of this Tier 1 Agreement or any Purchase Order and the General Terms and Conditions, the General Terms and Conditions shall prevail.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement by their duly authorized representatives effective as of this date: March 2013 (Effective Date).

Contractor: Eagle Services Corporation                    Company: Evonik Goldschmidt Corp

By: _____                         By: _____
        *[Print Name]*                                                        
                                                          Name: _____
Name: _____                                  *[Sign Name]*
        *[Sign Name]*                                     Title: _____
Title: _____
                                                          By: _____
                                                                  *[Pr*

                                                          Name: _____

                                                          Title: _____



## Part I – Commercial Terms

**The Scope of Work or Work under this Agreement (described below or in attachments) shall amount to a combination of the services to be performed ("Services") and any goods to be delivered as part of the Services ("Goods"):**

Provide Labor, material and equipment for industrial and environmental cleaning.

**Company and Work Locations**:  The term Company means only the legal entity named in the preceding pages and only the facilities or sites for such entity indicated in a Purchase Order.  If the legal entity so named is Evonik Degussa Corporation and the box below is checked, then this Agreement is executed by Evonik Degussa Corporation on behalf of itself and one or more of its subsidiaries in North America ("Affiliated Companies" – See **Attachment A**).

☐    **Inclusion of Affiliated Companies**.  This is to acknowledge that this Agreement is being executed by Evonik Degussa Corporation on behalf of itself and one or more of its Affiliated Companies.  Any one of the Affiliated Companies may issue Purchase Orders under this Agreement and the following additional terms and conditions apply:

   a. Contractor agrees to only invoice the entity (Evonik Degussa Corporation or one of the Affiliated Companies) that issued a specific Purchase Order.  Evonik Degussa Corporation has no obligation to pay for and does not guarantee payment for any Work purchased by any of the Affiliated Companies.  Remittance address to be indicated on Purchase Orders.
   b. The parties acknowledge that Evonik Degussa Corporation is acting for itself and for and on behalf of the Affiliated Companies in executing this Agreement.  Accordingly, Contractor agrees that each Affiliated Company is a third party beneficiary of this Agreement and each may issue Purchase Orders and enforce the terms of this Agreement as if it were an original party to this Agreement.
   c. **Attachment A** is part of this Agreement.

**Price:**  Will be indicated on the Purchase Order issued for the particular Work.

**Payment Terms:**  Net forty five (45) days from date of receipt of invoice.

**Contract Period/Term of the Agreement:**
This Agreement shall be effective for three (3) years beginning on the Effective Date ("Initial Term").  At the end of the Initial Term, the Agreement shall automatically renew for successive one (1) year terms ("Subsequent Terms") unless and until either party notifies the other in writing ninety (90) days prior to the end of the Initial Term or any Subsequent Terms that they intend to terminate the Agreement at the end of the current term.

**Method of Ordering:**  *(If Goods and Services may be ordered from time to time during the term of the Agreement, the amounts or other terms will be based on Purchase Orders issued to Contractor.)*

**Contractor Contact Information:**



| | |
|---|---|
| | |
| | |
| Attn: | |
| Telephone | |
| Fascimile | |
| E-Mail | |

**Company Contact Information:**



| | |
|---|---|
| | |
| | |
| Attn: | |
| Telephone | |
| Fascimile | |
| E-Mail | |

**Note: official notices must comply with the Notices provision of the General Terms and Conditions**

**Changes in Scope of Work:** All changes in the Scope of Work shall be governed by the terms and conditions of this Agreement and in accordance with the following procedure. The purpose of this procedure is to provide for expedient review, approval, control and payment or credits for all changes in the Scope of Work.

    a. The Field Change Order ("FCO") or similar form is to be initiated at the time a change in Work is identified. This FCO must include an estimated cost or reduction in cost with a complete a description as possible. THE CONTRACTOR IS RESPONSIBLE FOR MAKING SURE THE FCO IS INITIATED AND AUTHORIZED BY THE EVONIK JOB REPRESENTATIVE (defined herein) BEFORE ADDITIONAL COSTS ARE INCURRED. The Contractor risks not being paid for Work it considers extra if this written authorization is not obtained prior to incurring any such costs or expenses.

    b. The FCO shall be included in any invoice substantiation.

    c. The Contractor is responsible for assembling the documentation necessary to determine the cost of the extra Work or any change in the Work. In cases of Work paid on time and materials basis ("T&M"), this documentation consists of the Company Job Representative-signed daily timesheets describing the Work done, the date, the personnel on the job (by name, skill and classification) and equipment used for the job. Charges for material (including consumables) or third-party equipment must be documented with invoices.

    d. Work priced according to units or calculated with Contractor's standard man-hour lists must have a detailed take-off (itemization) listing the units or labor tasks involved. Sketches, isometrics, or other documentation describing the Work may be included. All rates and mark-ups, for both T&M and calculated by units of work are to follow those established in the applicable purchase order.

**Other Provisions or Special Requirements:**

**Part II - General Terms and Conditions – Tier I**

1.    Performance; Compliance with Laws.

1.1    The Contractor shall have exclusive control of the manner and method of performing its Work and shall perform the Work at its own risk. Contractor shall be solely responsible to Company for the acts and omissions of all its employees and subcontractors, their agents and employees and all other persons performing any Work under this Agreement.

1.2    Contractor's Work shall comply with all applicable Federal, State and local laws, rules, regulations, orders and licensing requirements (collectively, the "Laws"), including, but not limited to the Fair Labor Standards Act, Walsh-Healty Act, Robinson-Patman Act, Occupational Safety and Health Act, Civil Rights Act (and any other laws or regulations relating to employment discrimination), Executive Order 11246, the Toxic Substances Control Act, Federal Food, Drug and Cosmetic Act, Hazardous Materials Transportation Act, Department of Homeland Security chemical plant security rules or regulations, Laws or regulations relating to Workmen's Employers Liability, Unemployment Compensation and/or Old Age Benefits, or, generally relating to or affecting the employment of labor.

1.3    Contractor shall ensure that any Goods shall be adequately contained, packaged, marked and labeled and registered, if applicable, in compliance with all applicable Laws and that any Goods are in compliance with any applicable safety standards under such Laws.

1.4    Contractor shall, at its sole cost and expense, obtain all such permits, licenses, approvals, and certificates as are required to perform its Work.

1.5    Contractor's compliance obligations apply notwithstanding the following: (i) any review or clearance provided by Company; (ii) the provision of items or information by Company; (iii) any assistance Company may provide to Contractor, subcontractor, or their respective employees; and (iv) any right Company may choose to exercise under this Agreement, including a right to inspect and audit.

1.6    Contractor shall defend, indemnify and save harmless Company from and against all claims, liabilities, expenses (including attorneys' fees) fines, penalties, damages and/or economic losses (collectively referred to as "Losses") arising out of or in connection with the failure of Contractor or its employees, subcontractors, materialmen, or their agents and employees ("Contractor's Personnel") and/or the Goods and/or Services to comply with the requirements of this Section 1.   Contractor shall indemnify Company pursuant to the provisions of this section regardless of whether allegations are made against Company or Contractor.


2.    Price.   The purchase price for any Work to be provided under this Agreement is fixed and inclusive of all taxes, packing and shipping costs, unless expressly stated to the contrary in writing. Contractor warrants that the purchase price is not in excess of allowable prices under applicable governmental regulations.


3. Payment.

3.1    Goods.       Payment shall be made after acceptance of any Goods, upon presentation of invoices acceptable to Company or alternatively, after receipt of Goods in the case where the method of payment is Evaluated Receipt Settlement (ERS).   Contractor understands and agrees that where ERS is used as the method of payment, there will be no invoices and payment will be made in accordance with the Purchase Order price and the receipt amount.   Cash discounts shall be calculated from the date of receipt of acceptable invoices by Company. Any packing, shipping, freight

or charges, other than purchase price and sales tax, chargeable to Company, shall be substantiated by bills or invoices reflecting payment of said other charges.

3.2     Services.     Payment shall be made after Company's acceptance of any Services performed. Terms for any installment payments should be specified in a Purchase Order provided however that Company reserves the right to hold up to a 10% reserve whenever installment payments are used. If paying in installments, any balance will be paid after the completion and acceptance of all Services by Company. Company also reserves the right to withhold payment of any bill or part thereof, if according to Company estimates, the ratio of payments made to total purchase price would exceed the ratio of Services actually performed to total Services required under the Agreement, making due allowance for the 10% reserve. If, through no fault of the Contractor, Company requests Services that require Contractor's employees to be paid at premium rates of pay, Contractor will invoice the straight time portion of wages and the premium time portion of wages plus applicable taxes. However, no profit or overhead may be added to the invoice for the premium time portion of the wages.

3.3     Lien Waivers.     Prior to Company's acceptance of the Services and prior to any payment of monies held in reserve, Contractor shall have submitted to Company such forms of contractors' and subcontractors' affidavits, and contractors', subcontractors' and materialmens' waivers of lien as Company shall require evidencing to Company's satisfaction a full and complete release of any lien resulting from material furnished or work performed in connection with Contractor's Services. If any subcontractor or materialman refuses to furnish the required affidavits or waivers of lien in full, Contractor may furnish a bond satisfactory to Company to indemnify it against any such lien. Notwithstanding the foregoing, Contractor, to the extent Company has paid Contractor in accordance with the terms of payment, shall indemnify, save and hold Company harmless against any lien asserted against Company based on a claim for material, operating equipment or labor furnished under the Agreement by Contractor, its subcontractors or materialmen. If a lien is filed or remains unsatisfied, Contractor shall promptly indemnify Company for all such sums expended and cost incurred in discharging such lien.

3.4     Posting Bonds.     Company may at Company's expense require Contractor to post a bond covering the faithful performance of the Work, the payment of all obligations arising under the same, or the obligations under Section 12 (Contractor's Warranties), in such form and with such sureties as Company may deem appropriate

3.5     Right of Offset.     Contractor grants Company, in the event Contractor fails to perform any and all Services pursuant to this Agreement, the right to offset amounts owed by Company to Contractor.


4.     Delivery.     Contractor shall perform and/or deliver Work at the time and place, and in the manner specified by Company. If Goods are to be delivered in more than one shipment, per a schedule, Company may in its sole discretion change the schedule or temporarily suspend scheduled shipment. If Work is for Services, and if requested, Contractor shall provide a time schedule and weekly progress reports regarding the performance of the Services. In the event Contractor's inability to adhere to any applicable time schedule arises due to circumstances caused by Contractor, or its subcontractors, the Contractor shall remain responsible for completing the Services on time with an increased workforce or by overtime, as necessary, without any additional expense to Company. Unless otherwise agreed upon in writing, risk of loss to, liability and /or damage to Goods delivered or to Services performed remains with the Contractor until written acceptance of such Work by Company. Company reserves the right to cancel all or any part of the undelivered Goods or unperformed Services if Contractor does not make deliveries or perform as specified, or if Contractor breaches any of the terms hereof.

5.    Inspection and Acceptance.

5.1    Company is not required to but has the right, at reasonable times and upon reasonable prior notice, to inspect all Work.  Inspection or a lack of inspection before acceptance is made without prejudice to Company's right to perform such inspection after delivery of Goods or completion of Services.  It is expressly agreed that nothing herein shall be construed as making Company responsible for performing any inspections for the Work.

5.2    Acceptance of Work shall be made in writing signed either by Company or by Company and Contractor and shall only occur when any and all inspections and tests specified in this Agreement have been completed to Company's satisfaction.  If acceptance is delayed through no fault of the Contractor, Contractor is entitled to request acceptance in writing.  Even without an affirmative writing from Company, and lacking Company's written rejection or request for corrective action, acceptance shall be deemed to have been made six (6) months after delivery of Goods or completion of Services at the latest.

5.3    A delivery receipt or Company's signature on any shipping/receiving document is only evidence that Goods or Services have been received, not that they have been accepted by Company.  Inspection, payment or any partial or entire use or occupancy of Goods delivered or Services performed shall in no way constitute acceptance and shall be made without prejudice to any and all claims that Company may have against Contractor.

5.4    Without limiting any of Company's rights provided by law or by this Agreement, Contractor shall, upon request of Company and at Contractor's expense, immediately replace or rework any Work rightfully rejected by Company.

5.5    Company shall have the right to engage an independent auditor to inspect and audit Contractor's records, to evaluate and verify Contractors' compliance with the terms of this Agreement.  Any adjustments and/or payments that must be made as a result of any such audit or inspection of the Contractor's records shall be made within a reasonable amount of time (not to exceed 60 days) from presentation of Company's findings to Contractor.

5.6    Company shall have the right to conduct environmental, safety, and health ("ESH") audits and inspections at Contractor's manufacturing sites, branches, warehouse and/or service centers that are part of providing Work.  Company shall assess an ESH rating in accordance with Company's standard procedures.  If, in the opinion of Company, such ESH rating is unsatisfactory, Contractor agrees to address any deficiencies identified by Company, to Company's satisfaction, within three (3) months from Company's submission of the ESH rating to Contractor.  If Contractor fails to correct all such deficiencies to Company's satisfaction within such three (3) month period, Company shall have the right to terminate the Agreement by giving Contractor one (1) month written notice of its intent to so terminate.


6.    Performance Tests.  If Work is required to meet certain performance standards hereunder, performance tests ("Performance Tests") shall be conducted at Contractor's expense at the place where used or installed.  The conditions and procedures for the Performance Tests will be set by mutual agreement between Company and Contractor. Contractor must notify Company in writing at least five (5) working days prior to the making of any Performance Tests by giving the date and time of testing.  Company shall have the right to observe the tests.  Contractor agrees to immediately furnish to Company in writing the results of all such tests.


7.    Taxes and Governmental Charges.

7.1    Any existing tax, excise or governmental charge or any increase in or any additional such tax or charge (other than taxes based upon or measured by Contractor's net income or net worth) imposed after the execution date of this Agreement upon the sale of any Goods sold or Services

provided hereunder which Contractor may be required to pay, shall be paid by Company to Contractor in addition to the purchase price for the Work.  Company shall provide Contractor with a properly completed exemption certificate for any tax from which Company claims exemption.

7.2     Contractor shall, upon request of Company, inform Company whether the Goods are imported or manufactured with imported materials and furnish Company with all documentation required for duty drawback for the product or imported materials contained in the Goods purchased by Company hereunder.


8.     <u>Materials Furnished by Contractor</u>.  Contractor shall examine and verify the correctness and completeness of drawings, specifications, other documents or exceptions or alterations thereto and shall without delay bring to the attention of Company any doubts as for and any conflicts between such documents by an instrument in writing. Corrections proposed by Contractor after bidding must reflect a monetary savings to Company to be considered.  If Contractor has used its own drawings, specifications, or other documents or exceptions or alterations thereto for the supply of Goods or the performance  of Services under this Agreement, Contractor shall, if requested, furnish Company with a reasonable number of copies of any such documents and Company shall be entitled to use such documents for any further purposes with no extra charge by the Contractor.  Any tools, equipment, accessories and vehicles that are needed and/or required by Contractor for performing the Services shall be clearly identified as belonging to Contractor.


9. <u>Materials Furnished by Company.</u> If Company, or others on behalf of Company, furnishes any materials, tools or equipment to Contractor in connection with the manufacture, fabrication or processing of the Goods or performance of the Services, such items shall be held in trust by Contractor for Company.  Contractor shall promptly return any items to Company upon Company's request or upon completion of Contractor's obligations hereunder or other termination of this Agreement. Contractor assumes responsibility for loss of or damages to materials, tools, equipment or other property to be or being used or installed by Contractor, whether furnished by Company or others on behalf of Company.  Contractor is prohibited from using any tools, equipment or property belonging to Company without the permission of Company's appointed Job Representative.


10.     <u>Intellectual Property Rights.</u>

10.1     <u>Inventions and Improvements</u>.  Contractor shall promptly disclose to Company any and all inventions and improvements Contractor may make or conceive that arise out of Services rendered pursuant to this Agreement, or out of information acquired by Contractor in connection with this Agreement.  Contractor shall and does hereby grant and assign to Company the entire right, title and interest in and to any and all such inventions and/or improvements referred to above together with the right to apply for patents thereon in any and all countries of the world.  Contractor shall and does hereby grant and assign to Company the entire right, title and interest in and to any and all applications for patents that may be prepared or filed upon any such inventions and/or improvements referred to above and any and all patents that may be issued or be granted upon any and all such applications.    Contractor shall execute and deliver to Company all descriptions, applications, assignments and other instruments necessary or proper in Company's opinion to carry out the provisions above.

10.2     <u>Patent, Trademark and Copyright Infringement.</u>     Contractor represents and warrants that Goods supplied or Services performed hereunder and that the sale and performance thereof do not infringe, directly or indirectly, any third party's rights, such as any domestic or foreign patent, trademark or copyright. Contractor hereby agrees to indemnify and hold harmless Company its successors, assignees, customers and users of its products against any and all Losses, resulting from any alleged infringement of such domestic or foreign patent, trademark or copyright by reason of the

sale or use of Goods or Work. Contractor further agrees, at its sole cost and expense, to defend and hold harmless Company, its successors, assignees, customers and users of its products, against all suits at law or in equity for damages, claims or demands resulting from any such alleged infringement.

10.3    Drawings and other Specifications.    Contractor shall and does hereby grant and assign to Company the entire right, title and interest in any copyright of drawings, manuscripts, computer programs or other copyrightable works which arise out of Services rendered pursuant to this Agreement. Contractor agrees that all drawings, specifications, other documents or exceptions or alterations thereto which it has created in connection with its performance hereunder are the sole property of Company and shall be turned over to Company immediately upon Company's request or upon completion of Contractor's performance hereunder or other termination of this Agreement.

10.4    No license, under any trademark, patent, copyright, mask work protection right, or any other intellectual property right held by Company is either granted or implied by the conveying of Company's information to Contractor. None of the information which may be disclosed by Company shall constitute any representation, warranty, assurance, guarantee or inducement by Company of any kind, and, in particular, with respect to the non-infringement of trademarks, patents, copyrights, mask protection rights or any other intellectual property rights, or other rights of third persons.

10.5    Contractor shall execute and deliver to Company all applications, assignments and other instruments necessary or proper, in Company's opinion, to carry out the provisions of this Section 10. Contractor shall have written agreements with all of its representatives assigned to provide services under this Agreement that will enable Contractor to comply with the terms of this Agreement.

11.    Contractor's Warranties.

11.1    Goods.    For any Goods purchased or supplied under this Agreement the Contractor makes the following warranties:

(a)    Contractor warrants that the Goods will be new unless otherwise approved by Company in writing, shall conform to all specifications, performance criteria, drawings, samples or other descriptions furnished by Company, will be of best quality, and free of any defects in material and workmanship to the Warranty Period (defined herein). Contractor further warrants (i) good title to all Goods and that the Goods will be free from any encumbrances and (ii) all Goods covered by this Agreement will be fit and sufficient for their ordinarily intended use and purposes or the specific intended purpose where such purpose is defined by Company.

(b)    Contractor agrees at Company's option either to promptly rework or replace or otherwise correct, at Contractor's sole cost and expense, on reasonable notice from Company given within the Warranty Period, any and all non-conforming Goods. Contractor agrees to be responsible and at its cost and expense, to correct any such damage to any other Goods or Work performed by Contractor or any other person, or to any property owned by Company or any third party, occurring as a result of Contractor's corrective actions.

11.2    Services.    For any Services provided under this Agreement, Contractor makes the following warranties:

(a)    The Services shall be performed with the degree of high professional skill, sound practices, and good judgment normally exercised by recognized professional firms providing services of a similar nature, in conformance with all laws, regulations and governmental interpretations thereof, this Agreement and all other standards, descriptions and specifications furnished or adopted by Company and communicated to Contractor. Contractor warrants that all Goods furnished in connection with the Services will be new unless otherwise approved by Company in writing. Contractor further warrants (i) good title to all such Goods and that the Goods will be free from any encumbrances and (ii) that such Goods shall conform to Company's drawings, specifications, performance criteria, samples or other descriptions furnished by or on behalf of Company, will be of

best quality, and fit and sufficient for their ordinarily intended use and purposes or the specific intended purpose where such purpose is defined by Company. All Services, or Goods supplied incidental to the performance of Services, not conforming with these standards, shall be considered defective.

(b)    In the event any Services performed or Goods supplied incidental thereto is defective, Contractor shall at Company's option promptly correct or remedy any workmanship or re-perform the Services or rework or replace such defective Goods at Contractor's sole cost and expense on reasonable notice from Company given within the Warranty Period. Contractor agrees to be responsible for any damage caused thereby and, at its sole cost and expense, to correct any such damage to any other Goods or Services performed by Contractor or any other person, or to any property owned by Company or any third party occurring as a result of Contractor's corrective actions.

11.3    Warranty Period.    Unless otherwise agreed upon in writing, the Warranty Period for Goods purchased or Services performed under this Agreement shall be in effect until twelve (12) months after total start-up of the operation, system or process in which the Goods purchased or Services performed are actually used, but not to exceed a period of eighteen (18) months from the date of acceptance of said Goods or Services. Contractor agrees that all reworked or repaired (if authorized by Evonik) or replaced Goods or corrected Services shall be warranted in the same manner as set forth in the foregoing with said Warranty Period of twelve (12) months to run from the date such reworked or repaired or replaced Goods have been delivered or corrected Services have been completed, but in no event shall the Warranty Period for reworked or replaced Goods or corrected Services, be any shorter than that set forth in the first sentence of this Section 11.3.

11.4    Should Contractor fail or not promptly correct, remedy and/or re-perform any defective Services or rework or replace non-conforming Goods, then, in addition to its other rights and upon written notice, Company may, for Contractor's account and at Contractor's sole cost and expense, take all steps necessary to correct, remedy and/or re-perform the defective Services or rework or repair or replace non-conforming Goods and correct any additional damage resulting therefrom. Company may, at its option, offset the cost of all corrective measures from any monies due to Contractor, or charge Contractor directly for any or all such costs.

11.5    These warranties shall survive any inspection, delivery, use or acceptance of the Goods or Services, or payment therefore by Company. Contractor agrees that all warranties and indemnities applicable to Goods provided hereunder shall automatically inure to the benefit of, and be directly enforceable by, any third party purchasing or receiving such Goods from Company.


12.    Indemnification.

12.1    Contractor agrees to indemnify and hold harmless Company, any of its parents, subsidiaries, or affiliated companies and any of their respective officers, directors and employees (collectively the "Indemnified Parties"), from and against any and all claims or demands (whether rightful or baseless), losses, costs, expenses, obligations, liabilities, damages, recoveries, awards and deficiencies, including, without limitation, interest, penalties, and reasonable attorneys' fees and costs, and expert witness fees (collectively "Losses"), that the Indemnified Parties incur or may incur or suffer and to the extent that the Losses arise out of or relate to: (i) Contractor or any of its owners, officers, employees, subcontractors, or agents (collectively "Contractor's Personnel") negligence or willful misconduct in the performance or nonperformance of Work under this Agreement; (ii) any defect in design, material, or workmanship of Work; (iii) any breach of this Agreement including any breach of warranty or covenant and any misrepresentation related thereto by Contractor's Personnel; or (iii) any injury or death to any person or damage to or destruction of property of Company, Company's employees, Contractor, Contractor's employees or its subcontractors or materialmen or third parties. The foregoing applies whether or not such injuries are due to any negligence of the Indemnities, excepting from the foregoing the sole and complete negligence of the Indemnified Parties.

12.2    Contractor shall, at its sole cost, defend all suits brought upon such Losses, and pay all costs and expenses incidental thereto but Company, or any of the Indemnified Parties so sued shall have the right at their option, to participate in the defense of any such suit, without relieving Contractor of any obligations hereunder.

12.3    Contractor's obligations in this Section are not to be reduced or limited in any way by Losses in excess of insurance coverage or limits or by any defense Contractor may have under applicable workers' compensation laws or under other employee disability or benefit laws.

12.3    Contractor's obligations to indemnify under this Agreement shall survive termination or expiration of this Agreement.

13.    Timely Completion; Delays; Liquidated Damages

13.1    Contractor shall perform its obligations hereunder with all due diligence and without delay; provided, however, that neither party shall be liable for delays or non-performance caused by circumstances beyond its reasonable control, including labor disputes, fire, civil disturbances, or acts of God ("Force Majeure").    The party affected shall promptly notify the other party setting out the nature of the event of Force Majeure and its expected duration and use all reasonable efforts to minimize the extent of such Force Majeure event.  Quantities of Goods or Services affected by Force Majeure, may, at the option of the Company, be eliminated from the Agreement without liability, but the Agreement shall remain otherwise unaffected. Company reserves the right to terminate the Agreement by written notice without further liability if such delays or non-performance would in Company's sole judgment result in unreasonable hardship.  Such termination shall be accomplished in accordance with Section 16 hereof.

13.2    If the Contractor fails to complete any Work within the time specified under the Agreement due to causes for which the Contractor is responsible, and such delay is not excused under the terms of this Agreement, Company may demand Contractor's payment of liquidated damages if such scheduled amounts are agreed upon in a Purchase Order for the Work involved.  Such liquidated damages are not a penalty and shall be established in an amount for each calendar day of delay, up to a set percentage of the total contract price, until the Work is completed or accepted.  Such amount is fixed and agreed on by the parties because of the impracticability and extreme difficulty of fixing the true value of damages Company will sustain by the delay of the Work, such as overhead and service charges or delays caused to other related work and services, and shall be deducted from any monies due or that may become due to Contractor.  If demanded by Company, such liquidated damages shall be paid by Contractor to Company without prejudice to any further rights and claims which Company may make.

14.    Confidentiality and Return of Documents.

14.1    Contractor recognizes and agrees that this Agreement and all accompanying documents and materials together with any information provided to or learned by Contractor in connection with the Agreement, are strictly confidential and remain the sole property of Company.  Contractor shall not disclose to or use such information except to the extent necessary for its performance under the Agreement, and then only upon prior written consent of Company.  Contractor shall obligate its officers, employees, agents and all other persons and entities to whom such information has to be rightfully disclosed hereunder, to the same obligation of non-disclosure and non-use by an instrument in writing. Contractor agrees to comply with Company's reasonable further requests and to execute any additional documents deemed necessary by Company to protect the confidentiality of and/or the use restrictions on Company's information.

14.2    Upon Company's request or upon completion of its performance hereunder or other termination of the Agreement, Contractor shall promptly return to Company any and all documents, drawings, samples, specifications or other tangible material containing Company information and shall not retain any copies, notes, extracts or summaries thereof.

14.3    Contractor shall not, without Company's prior written consent, make reference to Goods supplied or Services performed under the Agreement or refer to Company or its affiliated companies, including its parent, in any way in connection with any promotional or advertisement activities.

14.4    Third-party confidential information that is in Company's custody and that is disclosed to Contractor shall be deemed to be Company information for purposes of the confidentiality and non-use restrictions under this Section 14.

14.5    Contractor's obligations under this Section shall not be affected in case the Agreement should expire or be terminated for any reason whatsoever.


15.    Quality Commitment.

In the event that the composition, packaging or sourcing of raw materials used in the production of Goods is altered, or the manufacturing process, quality tests, or quality test methods used in the manufacture of the Goods is altered, Contractor agrees to promptly notify Company of the alteration. Upon its request, Company or its customer may inspect and verify Goods at Contractor's facilities. Contractor agrees to promptly notify Company of loss of or change to any third party certification (such as ISO9000 Series, QS9000), or code or stamp that Contractor currently maintains (such as ASME U stamp, NBIC, R stamp) that occurs during the term of this Agreement or any extension thereof.


16.    Termination.

16.1    In addition to any termination rights stated elsewhere in this Agreement, Company may terminate this Agreement if (i) Contractor is adjudged bankrupt, or if it makes a general assignment for the benefit of its creditors, or if a receiver is appointed on account of its insolvency, or (ii) if Contractor is behind schedule through no fault of Company or (iii) if Contractor persistently or repeatedly refuses or fails, except in cases for which extension of time is mutually provided, to supply enough properly skilled workmen or proper materials, or (iv) it fails to make prompt payment to subcontractors or for materials or labor, or (v) persistently disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or (vi) otherwise breaches any provision of the Agreement or (vii) if Company receives notice of cancellation or of material change of Contractor's insurance policies or (viii) if any of the employees of the Contractor or of any subcontractor violates any Company safety guidelines or any other applicable plant rules or regulations.

16.2    Termination by Company shall be without prejudice to any other right or remedy at law or under the Agreement available to Company. Upon termination, Company may take possession of the Site and of all Goods, materials, equipment, tools, construction equipment and machinery thereon owned by the Contractor and may finish the purchase of Goods or performance of Services by whatever method deemed expedient. In such case Contractor shall not be entitled to receive any further payment until all Goods have been purchased or all Services are finished. If the cost of purchasing all Goods or finishing all Services exceeds the unpaid balance of the purchase price, the Contractor shall pay the difference to Company.


17.    Independent Contractor.

17.1    The relationship of the Contractor to Company under this Agreement shall be that of an independent contractor. Contractor acknowledges that it and all of its officers, employees, and agents is/are not an employee or agent of Company for any purpose whatsoever. Contractor shall be

responsible for all applicable I-9 and work eligibility verification, earnings reports and tax payments to government agencies, such as the U.S. Internal Revenue Service and the Social Security Administration including payment of all wages due its employees, insurance premiums, license fees, fingerprinting costs, outfitting expenses, and all other obligations and/or expenses of Contractor relative to its employees in performance of the duties under this Agreement.

17.2    Contractor acknowledges that it and its employees are not entitled to receive any of the fringe benefits received by Company's employees and Contractor is not protected under Company's Workers' Compensation Insurance policy.  Contractor shall not have the authority to enter into any contract on Company's behalf or to otherwise bind Company to any agreement unless expressly authorized to so do in writing.  Because Contractor is an independent contractor, Company has no direction or control over work to be performed hereunder, nor over the employees of the Contractor and Contractor shall at all times remain the employer of all of its employees, agents, subcontractors and representatives performing the Services (and shall be liable for each of their actions, omissions or breaches).  Contractor shall indemnify Company from a claim made by any Contractor employee against Company alleging rights or benefits as an employee of Company.


18.    Subcontractors.

18.1    Contractor shall not subcontract all or any part of the Services to be performed under this Agreement, nor delegate any of its duties under this Agreement, unless Contractor has first obtained the written consent of Company, such consent not to be unreasonably withheld or delayed.  Rejection by Company of any proposed subcontractor shall not obligate Company for additional costs.  Upon request, Contractor shall furnish Company a copy of all approved subcontracts.

18.2    Contractor shall provide in each of its contracts for an approved subcontractor that such subcontractor shall be bound by the terms of this Agreement and that the subcontractor is required to assume toward Contractor all of the obligations and responsibilities the Contractor owes Company, including but not limited to the provisions regarding confidentiality and health and safety.


19.    Dispute Resolution.

19.1    In the event that either Contractor or Company has reasonable grounds to believe that the other party to the Agreement has failed to fulfill any obligation hereunder, or, that its expectation of receiving due performance under the Agreement may be impaired, such party will promptly notify the other in writing of the substance of its claim and basis for its claim.  The party receiving such notice (non-claiming party) must respond in writing within ten (10) business days of receipt of such notice and either provide evidence of cure of the condition specified (or the commencement of a cure if the cure of the condition cannot be completed within such period with the exercise of diligence) or provide an explanation of why it believes that its performance is in accordance with the terms and conditions of the Agreement and also specify three (3) dates (within ten (10) business days from the date of its response) for a meeting to resolve the dispute.  The claiming party will then select one of the three dates. Such meeting shall be held at the main offices of the non-claiming party or at a location to be mutually agreed.

19.2    If the parties cannot, in good-faith discussions, resolve their dispute within ten (10) business days from the date when the claiming party receives the non-claiming party's written response or from the date when the above-mentioned meeting is held (which period may be extended by mutual agreement of the parties), the parties will refer the dispute or claim to senior executives of each of the parties with authority to settle or resolve the matter ("Senior Executives") who will attempt in good faith to resolve the controversy or claim.

19.3    If the matter has not been resolved within thirty (30) days of the meeting of Senior Executives (which period may be extended by mutual agreement of the parties), the parties will attempt in good

faith to resolve the dispute or claim through mediation in accordance with the Center for Public Resources Model Procedure for Mediation of Business Disputes (the "Mediation").

19.4    If the Mediation does not result in a resolution of the dispute within sixty (60) days of commencing such Mediation, then either party may pursue remedies available under applicable law. Each party shall continue to perform its obligations hereunder during the dispute resolution process set forth above.

20.    <u>Insurance</u>.  Contractor shall, at its own cost and expense, obtain and maintain in full force and effect the insurance coverage's required under Part IV of this Agreement.  Contractor shall provide Company with Certificates of Insurance demonstrating the coverage referred to in Part IV prior to the commencement of any Services or supply of Goods as set forth in this Agreement.

21.    <u>Miscellaneous.</u>

21.1    <u>Notices</u>.    Any notices, consents, claims, demands or other communications required hereunder shall be in writing and shall be deemed received on the following dates: when personal delivery is made (with written receipt); when received by the addressee if sent by U.S. mail with return receipt requested or a nationally recognized overnight courier (receipt confirmation); on the date sent by facsimile or e-mail (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or on the fifth business day after the date mailed by first class mail, postage prepaid.  Such communications must be sent to the respective parties at the following addresses:

| | Company | Contractor | |
|---|---|---|---|
| Legal Entity Name | | | |
| Address #1 | | | |
| Address #2 | | | |
| City, State, Zip | | | |
| Attention | | | |
| Telephone | | | |
| Fax | | | |
| E-mail | | | |
| Copy To: | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

21.2    <u>Amendments</u>.    This Agreement may only be amended, modified or supplemented by an agreement in writing signed by the authorized representatives of each party.  E-mail between representatives of the parties shall not constitute a writing sufficient to amend this Agreement.

21.2    <u>Assignment</u>.  Contractor shall not assign any of its rights nor delegate any of its obligations under this Agreement without first obtaining the written consent of Evonik.  Any purported assignment or delegation in violation of this Section shall be null and void.  No assignment or delegation shall relieve Contractor of any of its obligations under this Agreement.  Notwithstanding the foregoing, Contractor may assign its rights to a successor created by merger or operation of law or to the purchaser of all or substantially all of the business of Contractor.

21.3    Successor and Assigns:  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and permitted assigns.

21.4    Governing Law; Jurisdiction.  This Agreement and all matters arising out of or relating thereto shall be governed by and construed in accordance with the internal laws of the State of New Jersey without giving effect to any choice or conflict of law, provision or rule.  Any legal suit, action or proceeding arising out of or relating to this Agreement or to the transactions contemplated hereby shall be instituted in the federal and state courts located in such State and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

21.5    Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.
21.6    Severability.   Should any term or provision of this Agreement be found invalid, void, or unenforceable in any jurisdiction, such term or provision shall be deemed stricken and this Agreement shall continue in full force and effect as if such term or provision were never a part thereof.  Such invalidity or unenforceability shall not effect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

21.7    Waiver.   No waiver by Company of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by Company.  No waiver by Company shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

21.8    Cumulative Remedies.  The various rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except as may be expressly provided for in this Agreement.


[remainder of page is intentionally blank]

**Part III – General Terms and Conditions-Environmental, Safety, and Health**

1.    Scope and Purpose.   These Environmental, Safety and Health ("ESH") Terms apply, as appropriate, for the work conditions and hazards that Contractor may experience as part of or related to its Services or provision of Goods.   For example, any references to confined space or lockout/tagout regulations would only apply to certain work covered by such requirements.   These ESH Terms are in addition to more general terms within the Agreement and the more specific language in these ESH Terms govern in the event of a conflict with other terms of the Agreement. Any capitalized terms used in these ESH Terms which are otherwise undefined herein shall have the same meaning as used elsewhere in the Agreement.    Use of the terms "Contractor" in these ESH Terms refers to Contractor and its employees and any  subcontractor(s) and its employees and all of their respective officers, directors, partners, managers, supervisors, affiliates and/or subsidiaries, as appropriate, as well as other representatives or agents.

2.    Start of Work – First Entry to Company Site (Site).  Contractor agrees to examine the Site prior to commencing Work in order to acquaint itself with existing conditions.   Contractor accepts Site conditions as they exist on the date of entering into the Agreement and no additional allowances will be claimed for changes in Site conditions thereafter. Upon Contractor's first appearance at the Site to perform Work, or upon any employee's, subcontractor's or other representative or agent of Contractor's first appearance at the Site, it/they must contact the Job Representative or other Company designated representative and follow any policies and guidelines of Company, including the General Site Policies for the initial check-in, security requirements, and site orientation of all its employees, and for all shifts.  If requested, the Contractor must attend periodic follow-up meetings.

3.    Compliance
3.1    The Contractor shall be solely responsible for compliance with all Laws regarding the environment, safety and health and any regulations, ordinances, decrees and orders of any public authority having jurisdiction for environmental protection, the safety and health of persons, or the safety and protection of property  including but not limited to those Laws issued by the federal Environmental Protection Agency, the Occupational Safety and Health Administration, the Department of Transportation, the Public Health Service, the Centers for Disease Control and Prevention, the Consumer Product Safety Commission, and any Laws issued by comparable State or local agencies.

3.2    Contractor further agrees and acknowledges that the Occupational Safety and Health Administration regulations or state plan equivalent (henceforth collectively "OSHA regulations") require that his employees be trained in various subjects, such as, but not limited to, the hazards of and standards applicable to the Work (29 C.F.R. § 1926.21(b)(2)) (applicable to construction work), lockout/tagout (29 C.F.R. § 1910.147), process safety management (29 C.F.R. § 1910.119), confined space entry (29 C.F.R. §§ 1926.21(b)(6) or 1910.146), and asbestos (29 C.F.R. §§ 1910.1001 or 1926.1101).  The Contractor represents and warrants that its employees have and will be trained in accordance with all applicable OSHA standards, including to recognize and avoid the hazards of their work and to perform their work safely.

3.3    The Contractor's employees shall be equipped with the personal protective equipment required by applicable OSHA standards in 29 C.F.R. Parts 1926 and 1910, and with the personal protective equipment required to protect the Contractor's employees against other serious health or safety hazards.

3.4    The Contractor shall comply with all applicable OSHA standards for screening, testing or monitoring of employees, including those requiring pulmonary testing, blood testing, and urine testing,

hearing testing, respirator fit testing, drug screening, and/or applicable medical surveillance testing.

3.5     The Contractor shall fully comply with any Site-specific safety plans which the Company has reviewed and accepted.

3.6     The Contractor shall maintain all Work sites and facilities in a clean condition and free of any unsafe or hazardous conditions.  Construction material and equipment are to be stored properly.  The Contractor shall be solely responsible for initiating, maintaining, and supervising all safety measures and programs for its employees in connection with the Work.  The Contractor shall take reasonable precautions for the safety of, and shall provide reasonable protection to prevent damage, injury or loss to: (i) employees on the Site and other persons who may be affected thereby; (ii)  the Work, and materials and equipment to be incorporated into the Work; and (iii) other property at the Site or adjacent thereto not designated for removal, relocation or replacement in the course of the Work. Such precautions may include but not be limited to erecting and maintaining, as required by existing conditions and progress of the Work, work area barriers, posting of warning or danger signs, flashing guard lights at night and during weekends and holidays, ensuring qualifications of employees (including any clearances and training), promulgating work area safety rules for employees and notifying persons working nearby of adjacent utilities.   Nothing should be attached to railroad components or free-standing power lines.  Winches, lifting equipment, etc. may only be attached to plant components with the prior written permission of Company.  Changes to Company's buildings or to plants must not be undertaken without previous written permission of Company.  After completion of the Services or termination of the Agreement, the construction site is to be left in a cleaned-up condition.

3.7.    Contractor shall notify Job Representative immediately (but not later than 24 hours) of any incident, injury or illness experienced by a Contractor employee in its performance of any of the Work or on any part of Company's premises or lands, and to provide copies of the OSHA Forms 300 and 301 for a recordable injury or illness.

3.8     The Contractor shall comply with all Site requirements for the handling, storage, transport, and disposal of any wastes or hazardous materials. Unless specifically agreed with Company in writing, Contractor is responsible for the proper disposal of all wastes it generates in performing its Work and for the proper removal of all equipment and supplies brought to a Site.

3.9     The Contractor warrants that any equipment, products, materials, chemicals or Goods brought to the worksite, or to be part of the Services, or to be incorporated into the Services or Goods, comply with any registration, certification, use approval, or labeling/marking requirements of Law, including any requirements under the federal Toxic Substances Control Act, the Federal Insecticide, Fungicide and Rodenticide Act, any laws regulating mercury, lead or toxic metals content, or other such similar laws, as applicable.

3.10    The Contractor warrants that: (i) it has communicated the requirements of this Agreement to its employees, any approved subcontractors, and other representatives and/or agents; (ii) that it will communicate such requirements to any new employee, subcontractor, representative or agent who becomes involved in providing the Work during the term of this Agreement; and (iii)that it has policies and procedures in place to stop any Work deemed unacceptable or unsafe and to discipline any of its employees who violate any Law or violate the terms of this Agreement, including the Company's safety guidelines.  In the event that Company has communicated any matters pertaining to this Part III to Contractor, including identification of special safety procedures or identification of any unique site

hazards, Contractor warrants that it will timely and fully communicate this information to its employees, any subcontractors and other representatives or agents.

3.11    The Contractor shall immediately notify the Job Representative as soon as it becomes aware that any Work or employee has violated these ESH Terms or a potentially unsafe condition exists, regardless of the cause and whether or not Contractor believes it has resolved the noncompliance or unsafe condition.

3.12    To the fullest extent permitted by law, the Contractor shall indemnify Company for any Losses, incurred by its failure to comply with any Laws, including but not limited to its requirements for personnel training, personal protective equipment, and employee screening, monitoring and testing.

4.    <u>Company Policies and Guidelines</u>.    Contractor shall follow any Company policies and guidelines applicable to its Work.    An initial copy will be provided to Contractor prior to the start of Work and from time to time thereafter.    Company reserves the right to withdraw or modify such policies or safety guidelines at anytime and will provide updates to Contractor as appropriate.    The safety guidelines are meant to supplement what may be required by Law.    In the event that Contractor believes there is a conflict between its obligations to comply with Law and the safety guidelines, or any other information provided by Company, it shall immediately notify the Job Representative.

5.    <u>Contractor Safety</u>.
5.1    The Contractor shall designate a responsible person at the Site whose duty shall be to ensure compliance with these ESH Terms and Company's safety guidelines.    This person shall be the Contractor Representative unless otherwise designated in writing by the Contractor.  This person shall coordinate with the Job Representative or other Company designated person. The Contractor agrees to provide to the Company the name, title, and phone number of its emergency contact person prior to the commencement of its Work.

5.2    The treatment and care of injuries sustained by Contractor's employees shall be the responsibility of Contractor, however, Company may assist in responding to emergency cases, but only to the extent that the same does not compromise, in the sole, exclusive and non-reviewable judgment of Company, the health, safety and welfare of Company's employees.


6.    <u>Hazard Communication</u>
6.1    The Contractor represents that it is familiar with the Site, the Work to be performed, the project of which its work is a part, the potential hazards of the Work, and the Material Safety Data Sheets ("MSDS") for, and the hazards of the chemicals with which it is expected to work.     The Contractor also represents that it is familiar with the hazard labeling system used at the Work site.

6.2    Contractor shall furnish Company, prior to the first delivery of any Goods, Contractor's current MSDS and/or any other literature or information pertaining to such Goods and the hazards associated therewith including a list of all ingredients in the Work and the amount of one or more ingredients and the precautions which should be observed with respect thereto.    Contractor shall promptly furnish Company copies of any revisions to any of the same issued by Contractor during the term of this Agreement.

7.    <u>Unique Hazards or Material</u>.  When the use or storage of explosives, flammable, or other hazardous materials or equipment is necessary for the performance of Work, such as use of chemicals or materials that require special safety precautions or use of protective equipment, the Contractor shall exercise the utmost care and shall carry on such activities only by and under the

supervision of properly qualified personnel.  The Job Representative MUST approve in writing the use of such materials or equipment.

8.      Stop Work or Suspension.  Company has the right to stop or suspend the Work of the Contractor for any reason, including, but not limited to, the Contractor's failure to comply with any of the ESH Terms.  This also includes the right to request removal of equipment.

9.      Removal of Contractor Employee.  Company has the right to require the Contractor to remove an employee, either temporarily or permanently, from a Site for any reason, including, but not limited to, the failure to comply with the ESH Terms.

10.     Correction of Deficiencies.  When Company notifies the Contractor, either verbally or in writing, that the Contractor is not complying with the ESH Terms, the Contractor shall correct the deficiency immediately and take other action appropriate to minimize any damage or injury to persons or property.

11.     Inspection.  Notwithstanding any other notice requirements for inspection or audit in this Agreement, as environmental or safety issues warrant, in the Company's sole discretion, the Company has the right to access the Work and/or the Work site at any time to review Work  and monitor compliance with these ESH Terms.  The Company also has the right to review and copy all of the Contractor's documents that relate to such inspection.

12.     Audit.  Company has the right to review and copy all of the Contractors documents that relate to safety and health at the worksite, which includes but is not limited to its safety and health programs, safety and health training records, OSHA recordkeeping forms such as 300 and 301 (with exceptions for employee privacy cases), any incident report or first report of injuries form and any industrial hygiene monitoring test results.

13.     Reporting.  Copies of any records required to be kept by Law (and that are not restricted by employee privacy rights), including employee training information, occupational testing information, and workers compensation data shall be provided to Company within one day of a request. Contractor shall immediately notify Company of any event or circumstance that may impair Contractor's ability to perform Work, to comply with Law, or to meet these ESH Terms, or that may threaten any license, certificate, permit, authorization or the like that relates to meeting the ESH Terms.

14.     Cooperation in Governmental Investigation.   The Contractor shall assist Company in responding to requests by governmental bodies for information in connection with inspections or investigations of the Company relating to work involving the Contractor, any work involving the Company's employees, equipment or processes, or any worksite where Contractor's employees are present.  Within one day of the request, Contractor will make employees available at the worksite for interviews and shall produce copies to Company of any documents relevant to the investigation. Except as prohibited by law, the Contractor shall promptly inform the Company of inspections and investigations on the Company's property, and of subpoenas, document requests, requests for information, deposition notices, discovery requests, or similar requests by any governmental body, concerning the Company, the Work, or any accidents, injuries, illnesses or claims resulting from the Work.

15.     Substance Abuse.  In order to assist in maintaining a safe work place, to protect persons at Company facilities, to protect property and assets, to protect the public, and to ensure efficient operations, the Company has established a substance abuse policy in conformance with applicable

law and regulation.  Thus, it is prohibited for Contractor employees while performing Work to possess, use, consume, distribute and/or sell any illegal or illicit drugs or alcohol.  To the fullest extent permitted by law, the Contractor shall have developed and implemented a substance abuse policy for its personnel who perform Work at a Company Site.  This policy shall at minimum require their employees (including supervisory employees) to undergo pre-employment, random, regulatory, e.g., Department of Transportation, or for-cause drug screens, as appropriate.  Contractor's failure to implement its policy or any Contractor employee's apparent violation of Company substance abuse policy may be grounds for Company to request Contractor to exclude an employee from the Company's property.

16.    <u>Motor Carriers and Motor Vehicles</u>.  If Contractor owns or operates or oversees personnel who own or operate motor vehicles that will be brought to a Company site, Contractor shall ensure that the operation and use of such vehicles and the transport of any content or goods within or on the vehicles complies with applicable regulations of the federal Department of Transportation, the Pipeline and Hazardous Materials Safety Administration, the federal Motor Carrier Safety Administration, and/or state operator and motor vehicle licensing, certification, insurance, and registration requirements.  If Company believes that a motor vehicle intending to enter a site or intending to load or unload goods or cargo does not meet the above requirements or may present a safety concern, Company reserves the right to refuse entry of the vehicle, to delay its movement, or to delay any loading or unloading of such vehicle until safe or compliant operations can be assured.

[remainder of page is intentionally blank]

## Part IV – General Terms and Conditions-Insurance

Following are the <u>minimum</u> insurance requirements under this Agreement:

Contractor shall at its own cost and expense, obtain and maintain in full force the following types of insurance in the minimum amounts set forth below with insurance carriers having a rating of A as to financial strength by the latest edition of A. M. Best Co. effective in all localities where Contractor may perform the Work:

a.    Workers' Compensation insurance in accordance with the laws of the state(s) of operations covering all Contractor's employees, subcontractors, or their employees who may be engaged directly or indirectly in any work hereunder; Employer's Liability Insurance coverage in the amount of $1,000,000 for its employees;

b.    Comprehensive General Liability insurance including Contractor's Protective and Completed Operations, covering bodily injuries and property damage with combined single limits of $5,000,000 each occurrence and $5,000,000 aggregate;

c.    Comprehensive Automobile Liability insurance, including operation of owned, non-owned and hired automobiles covering bodily injury and property damage with combined single limits of $1,000,000 each occurrence;

d.    Errors and Omissions (Professional Liability) insurance with combined single limits of $1,000,000 each occurrence and $1,000,000 aggregate (see below);

e.    Pollution Liability insurance with combined single limits of $5,000,000 each occurrence and $5,000,000 aggregate (see below).

Coverage under "d" and "e" above will only be required when indicated in a Purchase Order issued for some particular Work and applicable to the nature and type of Work to be performed.

Prior to the commencement of any Work hereunder, Contractor shall furnish Company, and each of its Affiliated Companies where Goods and/or Services will be provided, a Certificate of Insurance on an Acord form demonstrating the coverage's referred herein. No policy provided hereunder shall be cancelled nor materially changed without thirty (30) days' written notice to Company and to each of its Affiliated Companies, as applicable. The Contractor will, upon request from Company, or each of its Affiliated Companies, as applicable, provide copies of all insurance policies insuring Contractor, including any professional liability insurance policies. All stated insurance policies, where applicable, will, to the extent of Contractor's negligence or willful misconduct, designate Company and each of its Affiliated Companies, as applicable, as **Additional Insured**, without qualifications or limitations, as its interest may appear. Contractor shall cause its insurers to waive all rights of subrogation against Company and to each of its Affiliated Companies, as applicable. The waiver of subrogation clause (if applicable, depending on State Law) and additional insured wording must be stated explicitly on the certificate of insurance.

The above coverage's and limits shall apply to any approved subcontractors and shall not be construed in any way as limits of liability or as constituting acceptance by Company or any of its Affiliated Companies of responsibility for losses in excess of insurance coverage or limits. No acceptance and/or approval of any insurance by Company or by any of its Affiliated Companies shall be construed as relieving or excusing Contractor or any approved subcontractors from any liability or obligation imposed by the provisions of this Agreement. To the extent applicable, this Section survives the termination or expiration of the Agreement.

Refer to Exhibit IV-I: Tier I Agreement Sample Certificate of Insurance.

**Part V – General Terms and Conditions-General Site Policies**

Contractor shall be required to ensure strict compliance with these General Site Policies while performing Work at a Company Site (Site) under this Agreement.

1.    Work and Worksite Management
1.1    Company will appoint and name a Job Representative for the duration of the Contract Period, who will act as a liaison to coordinate activities between Company and the Contractor and who will monitor Contractor's performance of Work to ensure its compliance with the Agreement, and not for the purpose of controlling the method or manner of the performance of the Work.

1.2    Contractor shall name a primary contact ("Contractor Representative") who shall be its designated representative with full authority to bind Contractor for all purposes under the Agreement and this Contractor Representative shall not be changed for the duration of the Contract Period, except with Company's permission.

1.3    The Contractor Representative must be on the Site upon request by Company's Job Representative whenever Company finds it necessary.

2.    Site Conditions.  Company reserves the right to let other contractors work adjacent to or at the Work site. The Contractor and its subcontractors or assignees shall properly coordinate Services with the activities of such other contractors as directed by Company's Job Representative: provided, however, that the ultimate responsibility for the safe coordination of the Services shall remain the duty of the Contractor.  Contractor's personnel employed at the Worksite are not permitted to enter any other area of the Site or facilities or rooms other than the ones associated with their Work.  Any activities at the Worksite should not interfere with the Site's plant operations or any other construction.

3.    Housekeeping. The up-keep of any Work locations or facilities, including clean-up, lighting and heating are the Contractor's sole responsibility. The Contractor shall establish the necessary Work facilities on a location at the Site assigned by Company's Job Representative. Should Company deem it necessary during construction to have the construction facilities changed or moved, it must be done by the Contractor free of charge.

4.    Site Services. Water, electricity, other utilities, and sanitary facilities will be provided to Contractor in accordance with Site policies or as otherwise agreed to by Company.

5.    Plant Security and Entrance Regulations.
5.1    General. All Contractor's employees and subcontractors' employees will be required to enter and exit the Site via the gate designated for their use by Company. Company will supply a control system for entry to and exit from the Site for safety and emergency reasons.  It is the Contractors' responsibility to participate in this system and follow other Site security requirements.

5.2    Additional Chemical Site Security.  Some Sites are subject to additional security requirements, including requirements imposed by the Department of Homeland Security.  In such cases, Contractor and subcontractor employees may be required to provide or participate in background check screening or provide a valid Transportation Worker Identification card (TWIC) prior to entrance to the Site or portions of the Site.

6.    <u>Scaffolding.</u>  If Contractor erects its own scaffolding, the cost for scaffolding has to be included in the Price.  All scaffolding shall be erected and disassembled by Contractor in accordance with OSHA regulations and other Site safety guidelines.  The condition, maintenance, repair and safety of all scaffolding erected by Contractor shall be the sole responsibility of Contractor.

7.    <u>Driving and Parking Regulations.</u>    Permission for driving vehicles into and within the Site must be obtained from the Company. Parking facilities are provided for Contractors in designated areas only.  The maximum speed limits, traffic signs, and other driving rules are as posted at Site and must be observed.

8.    <u>Photographs</u>. Photographs or videos in any medium, digital or analog, shall not be taken inside the Site without prior written permission of the Company.

9.    <u>Working Hours</u>.  The regular working hours at the Site should be observed, unless otherwise agreed by the Company.

[remainder of page is intentionally blank]

**ATTACHMENT A – <u>ONLY</u> APPLIES AS INDICATED IN PART I COMMERCIAL TERMS**

**LIST OF AFFILIATED COMPANIES**

Colortrend Canada Inc.
Colortrend USA LLC
Evonik Carbon Black, LLC
Evonik Cyro Canada Inc.
Evonik Cyro LLC
Evonik Degussa Canada Inc.
Evonik Foams, Inc.
Evonik Goldschmidt Corporation
Evonik Jayhawk Fine Chemicals Corporation
Evonik RohMax Canada Inc.
Evonik RohMax USA, Inc.
Evonik Silco Materials LLC
Evonik Stockhausen LLC